IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| XAVIER DORRELL ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 124-090 |
| ) | |
| LELAND DUDEK, Acting Commissioner ) | |
| of Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.    BACKGROUND**

Plaintiff protectively applied for SSI on May 12, 2021, alleging a disability onset date of December 7, 2010. Tr. ("R."), pp. 10, 179.  Plaintiff was sixteen years old on December 7, 2010, and was twenty-nine years old at the time the Administrative Law Judge ("ALJ") issued the

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Leland Dudek, Acting Commissioner of Social Security Administration, as the proper Defendant.

decision currently under consideration. R. 24, 77, 100. Plaintiff's alleged disabilities stem from an incident in which he was shot in the head and are based upon the following conditions: chronic headaches, memory loss, fatigue, seizures, post-traumatic stress disorder ("PTSD"), passing out, inability to smell, "sweats from flashbacks," and anger problems. R. 202. Plaintiff received his GED. R. 203. After his alleged disability onset date, Plaintiff accrued a history of work experience as a cook in a restaurant, retail worker, and laborer at a construction company. R. 203-04, 228-33. Plaintiff has not worked since 2018, several years before his application for SSI, nor engaged in substantial gainful activity since his application date. R. 12, 203-04.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 114-21. Plaintiff requested a hearing before an ALJ on April 17, 2023, R. 122-24, and ALJ Ronald Fleming held a hearing on August 14, 2023, R. 29. Represented by counsel, Plaintiff appeared and testified, as did a vocational expert ("VE") Robert Brabham. R. 29-61. On December 27, 2023, the ALJ issued a decision finding Plaintiff not disabled. R. 10-24.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 12, 2021, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: cognitive disorder secondary to a traumatic brain injury with encephalomalacia as a result of a gunshot wound to the head, seizure disorder, generalized anxiety disorder, major depressive disorder, and [PTSD] (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")] to perform medium

> work[2] as defined in 20 C.F.R. 416.967(c) except for the following restrictions: He cannot climb ladders, ropes, or scaffolds and must avoid all exposure to dangerous machinery and heights. The claimant is further limited to occupations requiring no more than simple routine repetitive task[s], not performed in a fast-paced production environment, involving only simple work-related instructions and decisions and relatively few workplace changes. He is also limited to occupations requiring no more than occasional interaction with co-workers and members of the public. The claimant will be able to maintain concentration persistence and pace for 2-hour increments. However, he cannot perform driving jobs.
>
> The claimant has no past relevant work (20 C.F.R. 416.965).
>
> 5. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969a). The claimant has not been under a disability, as defined in the Social Security Act, since May 12, 2021, the date the application was filed (20 C.F.R. 416.920(g)).

R. 12-23.

When the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting an immediate award of benefits, or in the alternative, remand, presenting two enumerations of error. (See doc. no. 9, "Pl.'s Br.") First, Plaintiff argues the ALJ and AC "erred in [assessing] and evaluating Plaintiff's vocational limitations associated with his established severe and non-severe impairments." Id. at 1. Plaintiff also alleges error in the ALJ's failure to include all Plaintiff's severe and non-severe limitations and impairments in the hypothetical questions posed to the VE. Id. The

---

[2] "Medium work" is defined as:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

3

Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11, "Comm'r's Br.")

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards

other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

Plaintiff argues his RFC is "incomplete and inadequate" because, among other reasons, the ALJ did not properly consider Plaintiff's headaches and their associated absenteeism limitation. Pl.'s Br., pp. 10-13. The ALJ found Plaintiff had the RFC to perform medium work and imposed mental limitations to accommodate Plaintiff's generalized anxiety disorder, major depressive disorder, PTSD, and cognitive disorder, as well as environmental/hazard limitations to account for Plaintiff's seizure disorder. R. 16-22. Regarding his headaches, Plaintiff argues the ALJ erred in determining they were a non-severe impairment because his hearing testimony established they were severe. Pl.'s Br., pp. 11 n.9, 12. Plaintiff also argues "whether one finds Plaintiff's headaches were severe or non-severe, they nonetheless existed and had a material effect on Plaintiff's ability to work and labor." Id. at 11 n.9. Plaintiff explains his recurring headaches "either incapacitate him where he couldn't go to work or would have a difficult time performing his work." Id. at 12. Thus, Plaintiff asserts the ALJ erred in failing to make findings about the headaches' impact on absenteeism or off-task time

5

in the workplace. Id. at 10 n.8, 13. In his second enumeration of error, Plaintiff argues the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions posed to the VE, noting "the VE acknowledged that being off task greater than 10% of the work day" and "absences exceeding more than 1 day per month" would both be "job preclusive," yet the ALJ made no findings about Plaintiff's absenteeism limitations. Id. at 14.

The Commissioner maintains Plaintiff's RFC is supported by substantial evidence. Comm'r's Br., pp. 5-15. The Commissioner's brief details Plaintiff's medical records and evidence, as well as Plaintiff's testimony, to support the ALJ's assessment of Plaintiff's RFC. Id. Regarding Plaintiff's headaches, the Commissioner argues the ALJ properly considered Plaintiff's subjective allegations of headaches and explained this testimony was inconsistent with other documented medical evidence. Id. at 13. The Commissioner further asserts Plaintiff forfeited this issue because Plaintiff "fail[ed] to acknowledge the ALJ's actual findings" about Plaintiff's headaches. Id. For the reasons described below, the Court agrees with Plaintiff and recommends remand for further consideration of Plaintiff's headaches and absenteeism limitations.

A. **Formulating Plaintiff's RFC**

1. **Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's

impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

An ALJ must also consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

7

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

### 2. The ALJ Erred in Determining Plaintiff's RFC

The Court concludes the case must be remanded because the ALJ failed to include any discussion about the impact, or lack thereof, of absenteeism limitations stemming from Plaintiff's headaches in the RFC assessment.

As an initial matter, the Court addresses the Commissioner's contention Plaintiff forfeited this argument. Comm'r's Br., p. 13. The Commissioner argues Plaintiff forfeited this argument because "Plaintiff[] fail[ed] to acknowledge the ALJ's actual findings" about Plaintiff's headaches. Id. (citing Jackson v. Comm'r of Soc. Sec., 779 F. App'x 681, 684 (11th Cir. 2019) (*per curiam*)).

The Court finds Plaintiff sufficiently "specif[ied] which aspect of the ALJ's decision was incorrect or unsupported by substantial evidence," see Jackson, 779 F. App'x at 684, because Plaintiff specifically points to his headaches and hearing testimony about absenteeism limitations, Pl.'s Br., pp. 12-13. Plaintiff claims "whether one finds Plaintiff's headaches were severe or non-severe, they nonetheless existed and had a material effect on Plaintiff's ability to work and labor." Id. at 11 n.9. Plaintiff then cited to his hearing testimony as establishing he "suffered frequent re-occurring headaches that would either incapacitate him where he couldn't go to work or he would have a difficult time performing his job and being off task." Id. at 12. Plaintiff also asserts "[o]ne's mental limitations, [such as] from [] headaches . . . can be considered in findings relating to absenteeism or off task time," but because "the ALJ simply made no such findings, there is a lack of substantial evidence to support the denial of disability." Id. at 12 n.10. Plaintiff also states the ALJ's decision failed to "assume [] with any specificity [] the existence of" Plaintiff's "severe

8

headaches and his inability to function." Id. at 13.

Therefore, by identifying headaches and corresponding absenteeism limitations as evidence the ALJ failed to fully consider, Plaintiff adequately raises this argument. Accordingly, Plaintiff did not abandon his argument that the ALJ failed to properly assess the limitations associated with his headaches.

Because Plaintiff did not forfeit this issue, the Court turns to the merits of Plaintiff's argument. Plaintiff's medical records reveal a history of reported headaches, though they also show fluctuations in headache severity and frequency over time. See discussion *infra*. Immediately after Plaintiff was shot in the head, he reported experiencing headaches. R. 704. Shortly thereafter, Plaintiff's 2011 medical records reveal he did not experience headaches. R. 307, 309, 311, 320, 351, 354, 391, 973. Plaintiff's medical records next demonstrate he reported experiencing headaches on February 13, 2013. R. 609. Between 2017 to 2023, Plaintiff endorsed suffering from headaches across multiple medical records. R. 399, 492, 636, 651, 654, 658, 1105, 1121. Furthermore, in December 2019, Plaintiff began to experience "sharp" headaches with a described "severity of 10/10," which occurred four times a week with a duration of three to five minutes. R. 495. Additionally, state agency medical consultant Dr. Kevin Turner's psychological evaluation noted Plaintiff's alleged impairments included chronic headaches. R. 498.

On the other hand, medical records from 2013 and 2022 show Plaintiff denied having headaches on other occasions. R. 661, 1018, 1042, 1142. Records from 2019 and 2020 further demonstrate Plaintiff used medication to effectively manage his headaches. R. 454, 465, 470, 481, 551, 651, 1055, 1060, 1071.

At the hearing, Plaintiff testified he had recurring headaches, which he did not experience prior to being shot in the head. R. 43, 49. He described experiencing headaches three or four days

9

a week, which previously prevented him from going into work or being fully productive at work. R. 49, 51. As a result of his headaches, Plaintiff stated he "wasn't able to keep a job" because his former employers "either pulled [him] off, [told] [him] to go home, or they may fire [him]." R. 51. Plaintiff further expressed his headaches often "come out of nowhere." R. 50. Plaintiff's mother also testified about observing Plaintiff when he experiences headaches, describing that they are "really painful" and cause Plaintiff to "blank[] out." R. 55.

In step two of the sequential evaluation process, the ALJ assessed record evidence about Plaintiff's headaches and determined this impairment was non-severe because it "[has] no more than a minimal effect on [Plaintiff's] ability to perform basic work activities." R. 13. The ALJ explained:

> The claimant did not offer any testimony as to any limitations stemming from [his non-severe] impairments. Furthermore, the medical evidence generally indicates that the treatment for [this] impairment[] has been brief, routine, and conservative with no mention of ongoing sequelae. Although the claimant experience[s] chance headaches, he generally appears to manage his condition with prescribed medication. Indeed, there have been multiple occasions when [he] [has] specifically denied experienc[ing] any headaches and when his physical examinations documented normal neurological findings. Furthermore, there is no indication in the record that the claimant's headaches cause any significant functional limitations.

R. 12-13 (citing R. 551, 609, 651, 654, 1127-28).

Following this discussion, after assessing all of Plaintiff's severe and non-severe impairments at step two, the ALJ stated:

> Nevertheless, to determine the claimant's [RFC], the undersigned considered the functional limitations resulting from all the claimant's medically determinable impairments, including those that are non-severe (20 C.F.R. 416.945). A more detailed discussion of these medically determinable impairments and the resulting functional limitations is included below. The evidence does not support a finding of any additional functional limitations other than those determined herein.

R. 13.

After the ALJ concluded Plaintiff's headaches constituted a non-severe impairment that do not cause any significant functional limitations at step two, the ALJ did not reference Plaintiff's headaches or otherwise discuss any functional limitations related to this impairment in formulating Plaintiff's RFC. See R. 13-24. However, as described below, the RFC assessment is incomplete without further consideration of Plaintiff's headaches and associated absenteeism limitations, and thus, the Court cannot agree substantial evidence supports the Commissioner's decision. See Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019), *abrogation in part recognized by* Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 894 (11th Cir. 2022) (holding new regulation 20 C.F.R. § 404.1520(c) abrogated the treating-physician rule).

The ALJ's initial error occurred at step two when the ALJ mischaracterized Plaintiff's testimony about his headaches. Specifically, the ALJ's decision states Plaintiff "did not offer any testimony as to any limitations stemming from" his headaches. R. 12. However, the Court's review of the hearing transcript reveals otherwise: Plaintiff testified to absenteeism limitations that flow from his recurring headaches. See R. 49, 51. In particular, Plaintiff described he "wasn't able to keep a job" because, while previously employed, he was unable to go to work or "do anything" on days when he experienced headaches. R. 49. Furthermore, in discussing his former employment at Kroger, Plaintiff explained he was fired due to memory issues and "if [he] had headaches [he] didn't come in." R. 51. However, without acknowledging this testimony, the ALJ concluded there is "no indication in the record" Plaintiff's headaches cause significant functional limitations in light of their "brief, routine, and conservative" treatment, Plaintiff's documented denials of headaches, and Plaintiff's management of headache symptoms with medication. R. 13.

This error directly influenced the RFC formulation at step four. Specifically, the ALJ stated, "to determine [Plaintiff's] [RFC], the undersigned considered the functional limitations

11

resulting from all [Plaintiff's] medically determinable impairments,[3] including those that are non-severe. A more detailed discussion of these medically determinable impairments and the resulting functional limitations is included below." R. 13. Because his conclusion Plaintiff's headaches did not cause any significant functional limitations is based on an erroneous assessment of the record, the Court cannot say the RFC is supported by substantial evidence.

As a result of this step two error, the ALJ omitted any discussion of Plaintiff's headaches and what limiting effects, if any, the headaches had on Plaintiff's ability to work when formulating his RFC. The ALJ began the RFC assessment by describing Plaintiff's hearing testimony, citing to Plaintiff's testimony about experiencing traumatic flashbacks, emotional difficulties, sleep issues, and more. R. 16-17. The ALJ further detailed Plaintiff's daily activities, concluding they were "inconsistent with the extent of his alleged limitations." R. 17. Notably absent from this discussion is any reference to Plaintiff's testimony about having headaches or prior issues with absenteeism at work. The ALJ then provided an overview of the record medical evidence documenting Plaintiff's traumatic brain injury, cognitive disorder, mental status, and seizures. R. 17-19. Thereafter, the ALJ described evaluations conducted by the state agency medical and psychological consultants, highlighting findings about Plaintiff's mental limitations. R. 19-22. Finally, the ALJ stated he considered Plaintiff's mother's third-party function report, though he did not specifically mention her hearing testimony. R. 22. Based on the foregoing, the ALJ concluded Plaintiff had the RFC to perform medium work with additional limitations. Id.

---

[3] The ALJ did not specify whether Plaintiff's headaches were medically determinable at step two. However, "[i]f an ALJ concludes that an impairment is not medically determinable, then the ALJ must explain that conclusion." Matthews v. Kijakazi, No. 4:21-CV-307, 2022 WL 4355348, at *3 (N.D. Fla. Aug. 30, 2022), adopted by 2022 WL 4358099 (N.D. Fla. Sept. 20, 2022). Although the ALJ explained reasons why Plaintiff's headaches were non-severe, absent a specific statement Plaintiff's headaches were not medically determinable, the Court declines to assume the ALJ found the headaches to be not medically determinable.

Because the ALJ did not consider the absenteeism limitations about which Plaintiff testified, even to reject such testimony and conclude these limitations were not significant, the RFC analysis is incomplete. The ALJ's requirement to evaluate a plaintiff's non-severe impairments and their associated limitations in formulating the RFC is well-established. An ALJ must consider "all impairments, severe and non-severe," in formulating a plaintiff's RFC.[4] Schink, 935 F.3d at 1268. Furthermore, social security regulations provide:

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, *we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your RFC*. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone . . . . In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . .

20 C.F.R. § 416.945(e) (emphasis added).

Likewise, even though a non-severe impairment by itself "may not significantly limit an individual's ability to do basic work activities," such an impairment "may[,] when considered with limitations or restrictions due to other impairments[,] be critical to the outcome of a claim." SSR 96-8p, at *5.

Here, the ALJ found Plaintiff had severe impairments that did not meet or equal those of a listed impairment under the applicable regulations, R. 13-16, yet he failed to consider the limiting effects of Plaintiff's headaches. Rather, as described, he incorrectly concluded Plaintiff offered no testimony about limitations from his headaches. R. 12. This error is also

---

[4] Although Plaintiff argues the ALJ erred in deciding Plaintiff's headaches were a non-severe impairment, Pl.'s Br., p. 12, the Court declines to decide this issue. As described, the ALJ still had to consider Plaintiff's headaches in formulating the RFC even if they were properly determined to be a non-severe impairment. See Schink, 935 F.3d at 1268. Thus, even if the ALJ erred in finding the headaches were non-severe, this error is harmless in light on the ALJ's obligation to assess the associated limitations of non-severe impairments at step four.

13

problematic because, by overlooking evidence about headaches and absenteeism limitations, the ALJ neglected to consider this limitation in combination with Plaintiff's other impairments and limitations. Thus, as crafted, the RFC is insufficient.

Moreover, an ALJ's conclusion an impairment is non-severe at step two does not establish that impairment's impact on the claimant's ability to work for RFC purposes. See Pupo v. Comm'r Soc. Sec. Admin., 17 F.4th 1054, 1065 (11th Cir. 2021) (describing ALJ's failure to discuss how claimant's incontinence, not determined to be severe at step two, would impact her ability to perform work for RFC purposes); Core v. Kijakazi, No. 3:21-CV-64, 2022 WL 4116986, at *4 (M.D. Ala. Sept. 9, 2022) ("The ALJ's consideration of urological issues at step two does not show that he considered their impact on [claimant's] ability to work at steps four and five.")

As described, the ALJ's RFC formulation contains no discussion of Plaintiff's headaches and their effect on Plaintiff's ability to work, despite Plaintiff's hearing testimony providing support for absenteeism limitations. See id. at *4 & n.7 (citing claimant's hearing testimony about the frequency of bathroom breaks necessitated by his urological issues and reasoning "[g]iven this possible limitation on his ability to perform work, it is necessary for the ALJ to consider that impairment when evaluating [claimant's] RFC"). Accordingly, because of this omission, the ALJ's "duty to consider severe and non-severe impairments for RFC purposes remains unsatisfied." Id. at *4.

What's more, even though the ALJ stated he "considered all symptoms" in formulating Plaintiff's RFC, this statement alone is insufficient to establish the ALJ properly analyzed the totality of Plaintiff's severe and non-severe impairments. See Pupo, 17 F.4th at 1064 ("[A]lthough the ALJ stated he 'considered all symptoms,' his decision demonstrates that he

14

did not."). "Although the Eleventh Circuit in the past has held this language is enough to demonstrate the ALJ considered all necessary evidence, the Eleventh Circuit more recently held this statement is not sufficient when the ALJ's decision demonstrates they did not consider all symptoms." Johnson v. O'Malley, No. 1:23-cv-340, 2024 WL 4142654, at *5 n.7 (M.D. Ala. Sept. 10, 2024) (citing Pupo, 17 F.4th at 1064). Rather, "the ALJ has a duty to 'make specific and well-articulated findings as to the effect of the combination of impairments.'" Id. (citing Walker v. Brown, 826 F.2d 996, 1001 (11th Cir. 1987)). Here, the ALJ's decision demonstrates he did not consider all Plaintiff's symptoms because he did not assess Plaintiff's headaches and related absenteeism limitations after erroneously concluding there was no support for headache-related limitations in the record. See R. 12-24.

Accordingly, without an accurate assessment of Plaintiff's testimony and a determination about whether absenteeism issues from headaches constitute a significant functional limitation, the Court cannot say that this error was harmless. See Snow v. Colvin, 8 F. Supp. 3d 1345, 1354-55 (N.D. Ala. 2014) (noting ALJ's statement claimant experienced no physical limitations was incorrect and concluding "because the ALJ's RFC was influenced, if not based, on a mischaracterization of the record, the court cannot say that the RFC is supported by substantial evidence"); see also Cavarra v. Astrue, 393 F. App'x 612, 614-15 (11th Cir. 2010) (*per curiam*) (highlighting ALJ's mischaracterization of claimant's testimony in determining ALJ improperly discredited medical opinion).

The Commissioner contends "the ALJ expressly considered Plaintiff's subjective allegations of headaches and explained it was inconsistent with his medical evidence that documented effective management of the condition with prescribed medications." Comm'r's Br., p. 13. The Court disagrees with the Commissioner's characterization of the ALJ's decision.

15

Although the ALJ *referenced* Plaintiff's testimony in his step two analysis, R. 12, the ALJ's statement Plaintiff offered *no* testimony reveals he overlooked Plaintiff's testimony about headache-related limitations. This oversight is problematic. By ignoring Plaintiff's testimony about absenteeism limitations, the ALJ's formulation of Plaintiff's RFC is incomplete because it does not include consideration of the functional limitations from *all* of Plaintiff's impairments, including his non-severe impairments.

In sum, because the potential for absenteeism from Plaintiff's headaches creates a "possible limitation on his ability to perform work," the ALJ erred in failing to assess this limitation in formulating Plaintiff's RFC, and thus the Court cannot conclude Plaintiff's RFC is supported by substantial evidence. Core, 2022 WL 4116986, at *4 n.7. Furthermore, a complete RFC analysis will better inform the ALJ's consideration of the VE's hypothetical questions at step five.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's SSI application. Indeed, the Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (*per curiam*) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984)[5] (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the [Commissioner]"). However, for the reasons set forth above, the Court cannot affirm the administrative decision as supported by substantial evidence. As such, remand is warranted. The Court need not address Plaintiff's remaining contentions, including any alleged error regarding the ALJ's assessment of Plaintiff's limitations associated with his other impairments. See Pupo, 17 F.4th at 1066 n.4 (offering no opinion on all alleged errors where remand required on two of four issues but instructing reconsideration of applications on remand based on entire record); Demenech v. Sec'y of Dep't of Health and Hum. Servs., 913 F.2d 882, 884 (11th Cir. 1990) (*per curiam*) (declining to address all issues where case due to be remanded on dispositive issue identified and discussed in detail).

Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS,** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 2nd day of April, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA